**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

EULINDA RUSS,

     Plaintiff,

v.                                                                  Case No. 3:14-cv-1174-J-32JRK

NF WINDSOR, LLC,

     Defendant.

_____

**O R D E R**

This disability discrimination case is before the Court on Defendant NF Windsor, LLC's Case-Dispositive Motion for Summary Judgment (Doc. 9), to which Plaintiff Eulinda Russ has responded (Doc. 22). With the Court's permission (Doc. 27), Windsor filed a reply (Doc. 28).

**I.    BACKGROUND[1]**

In October 2010, Windsor, a health and rehabilitation center, hired Russ as a certified nursing assistant ("CNA"). According to Windsor's official Job Description, a CNA performs activities of daily living for the residents assigned, including providing personal care, grooming, and hygiene; assisting residents to and from the bathroom; ambulating residents; and assisting residents in and out of chairs and wheelchairs.[2]

---

[1] Russ agrees that "the basic facts are substantially as [Windsor] presents them." (Doc. 22 at 2). Thus, the Court has taken most of the background from Windsor's motion for summary judgment (Doc. 9), supplementing it when appropriate.

[2] The corporate name on the job description is not Windsor, but Gulf Coast Health Care, which the Court presumes is an affiliate or parent of Windsor. Russ does

(Doc. 9-4). The physical requirements include "walking, reaching, climbing, bending, and lifting," among other actions. Id. In addition, the job description includes a safety provision, which requires that CNAs "adhere to safety rules and regulations." Id. Patient sitters are CNA assigned to residents who need individual attention from the CNA, who must always be prepared to lift residents in and out of bed and wheelchairs. (Doc. 9 at 2).

When she was hired, Russ informed Windsor that she had been injured in a work-related accident during her most recent past employment. Windsor regularly gave Russ time off to go to doctor's appointments related to her injury during her tenure there. On Friday, July 20, 2012, Russ's worker's compensation physician placed her on medical restrictions, prohibiting her from lifting or carrying more than ten pounds, bending, squatting, or twisting.[3] (Doc. 9-8). Russ did not report her medical restrictions to Windsor, and that weekend, she worked several shifts as a CNA assigned as a patient sitter. (Doc. 9-11).

On Monday, July 23, 2012, Russ used Windsor's copier to photocopy the worker's compensation form detailing her medical limitations and left the document in the machine. That day, Samantha Brown, one of Russ's supervisors, found the document on the copier and brought it to Administrator Melanie McWhite. Brown called Russ at home to tell her she had found the document and not to return to work

---

not contest that this is the relevant job description for a Windsor CNA.

[3] Both parties refer to the healthcare provider as a "physician," though the form states that the provider was an "advanced registered nurse practitioner" ("ARNP"). (Doc. 9-8). The distinction does not affect the Court's analysis.

2

the following day. The accidental discovery of Russ's worker's compensation form was the first Windsor had learned of her medical restrictions. According to Windsor, Russ's actions "placed both Windsor's residents and herself at risk" because she was "restricted by her workers' compensation doctor from performing her duties as of the time of the shifts that she worked as a patient sitter." (Doc. 9 at 2).

On July 24, 2012, Windsor suspended Russ for "conduct regarded as improper," specifically her failure "to notify nursing administration of work restrictions," a violation of Policy Number 11. (Doc. 9-10). According to the Gulf Coast Health Care Human Resources Policies and Procedures Manual, violations of Policy Number 11 are Category I violations and include "conduct that would be widely regarded as improper or inappropriate in a work group (to include, but not limited to resident abuse or neglect) or serious violations of Corporate Compliance Policies and Privacy Rule Policies."[4] (Doc. 9-5). Windsor investigated the incident, including interviewing Russ and obtaining a written statement from her regarding her actions. (Doc. 9-9). Following the investigation, Windsor concluded that Russ had committed a Category I offense, which constitutes a "most serious" offense that may subject an employee to discharge on a first offense.[5] (Doc. 9-5). Windsor terminated Russ's employment on July 27, 2012. (Doc. 9-11).

---

[4] On October 26, 2010, Russ signed a form acknowledging that she received a copy of the Gulf Coast Health Care Associate's handbook. (Doc. 9-7).

[5] The policy states, "Because of the seriousness of the nature of these offenses, the associate should be immediately **suspended pending investigation**, and if found to have committed the offense, terminated." (Doc. 9-5 at 1) (emphasis in original).

On June 13, 2014, Russ filed a two-count complaint in the Circuit Court of the Eighth Judicial Circuit in and for Bradford County, Florida. (Doc. 2). Windsor removed the case pursuant to 28 U.S.C. §§ 1331 and 1441. (Doc. 1). In her complaint, Russ alleges that Windsor unlawfully discriminated against her in violation of the Americans With Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq., and the Florida Civil Rights Act ("FCRA"), §§ 760.01-11, Fla. Stat. (2000) (Count I); and retaliated against her for exercising her rights under Florida's Workers' Compensation Law, § 440.205, Fla. Stat., (Count II). (Doc. 2). On August 15, 2016, the Court remanded Count II for lack of subject matter jurisdiction, as retaliation claims brought under § 440.205 are non-removable. (Doc. 17). Thus, Windsor's motion for summary judgment (Doc. 9) as to Count I is ripe for review.

## II.    STANDARD OF REVIEW

Summary judgment is proper where "there is no genuine issue as to any material fact" and "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "The burden of demonstrating the satisfaction of this standard lies with the movant, who must present pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that establish the absence of any genuine material, factual dispute." Branche v. Airtran Airways, Inc., 342 F.3d 1248, 1252-53 (11th Cir. 2003) (internal quotations omitted). An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986).

In determining whether summary judgment is appropriate, a court must draw inferences from the evidence in the light most favorable to the non-movant and resolve

4

all reasonable doubts in that party's favor. See Centurion Air Cargo, Inc. v. United Parcel Serv. Co., 420 F.3d 1146, 1149 (11th Cir. 2005). However, "Rule 56 mandates the entry of summary judgment, upon motion, against a party who fails to make a showing sufficient to establish an element essential to his case on which he bears the burden of proof at trial." Schechter v. Ga. State Univ., 341 F. App'x 560, 562 (11th Cir. 2009) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).

## III. ANALYSIS

### A. ADA Discrimination

To prevail on an ADA discrimination claim, a plaintiff must establish that (1) she had a disability, (2) she was qualified to perform her job, (3) she was subjected to an adverse employment action, and (4) her disability was a substantial or motivating factor that prompted the defendant to take the adverse employment action. Collado v. United Parcel Serv. Co., 419 F.3d 1143, 1152 n.5 (11th Cir. 2005).

After a plaintiff has shown a prima facie case of discrimination and, thereby, has raised the presumption of discrimination, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. See Rojas v. Florida, 285 F.3d 1339, 1342 (11th Cir. 2002); Combs v. Plantation Patterns, 106 F.3d 1519, 1528 (11th Cir. 1997). The employer "need not persuade the court that it was actually motivated by the proffered reasons." Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254-55 (1981); Chapman v. AI Transport, 229 F.3d 1012, 1024 (11th Cir. 2000). "If the employer successfully articulates such a reason, then the burden shifts back to the plaintiff to show that the proffered reason is really pretext

for unlawful discrimination." Corning v. LodgeNet Interactive Corp., 896 F. Supp. 2d 1138, 1144 (M.D. Fla. 2012) (citation omitted).

Even assuming arguendo that Russ has made out a prima facie case for disability discrimination, there is no dispute that Windsor proffered a legitimate, non-discriminatory reason for terminating Russ—namely, she failed to report her work restrictions to Windsor in violation of its policies and continued to work as a CNA, caring for residents in a position that required frequent lifting in violation of her lifting and carrying restrictions of ten pounds. (Doc. 9 at 10). As a result of Russ's actions, Windsor determined that Russ put both herself and its residents at risk of harm. Id.

The record supports Windsor's proffered reason. The notes in the official Windsor memorandum memorializing the termination specify that Russ was terminated "for failure to notify supervisor of physical restrictions" and "could have caused potential harm to Associate and/or resident." (Doc. 9-11). Indeed, McWhite testified that Russ's termination "was not based on the fact that she was on workers' comp; it was based on her failure to report her limitations to Windsor." (Doc. 9-2 at 13:15-18). Further, McWhite testified that if Russ had disclosed the limitations that she could not lift, she would not have been fired. (Id. at 32:2-5). To the contrary, McWhite explained that Windsor offers medical leave, FMLA, or other available alternatives to support employees through whatever restrictions they have at the time. (Id. at 9-17). This legitimate, non-discriminatory reason for Russ's termination would rebut any presumption of discrimination and require Russ to demonstrate that

this reason was mere pretext. See Alvarez v. Royal Atl. Developers, Inc., 610 F.3d 1253, 1264 (11th Cir. 2010).

To show pretext, the plaintiff must present sufficient evidence "to permit a reasonable fact finder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." Gerard v. Bd. of Regents of State of Ga., 324 F. App'x 818, 826 (11th Cir. 2009) (quoting Combs v. Plantation Patterns, 106 F.3d 1519, 1528 (11th Cir. 1997)). Further, "conclusory allegations, without more, are insufficient to show pretext." Id. (citing Mayfield v. Patterson Pump Co., 101 F.3d 1371, 1376-77 (11th Cir. 1996)). "Instead, the plaintiff must meet the proffered reason 'head on and rebut it.'" Id. (quoting Chapman v. AI Transp., 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc)). A reason is not pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993). The Court must "not act as a super-personnel department that reexamines an entity's business decisions; rather we limit our inquiry to whether the employer gave an honest explanation of its behavior." Thomas v. CVS/Pharmacy, 336 F. App'x 913, 914 (11th Cir. 2009) (internal quotations and citations omitted).

Russ provides some reasons for why Windsor's explanation is mere pretext for disability discrimination. First, she notes that "only two days passed prior to [Brown] learning of the restrictions and that the punishment imposed was overly harsh in response to the alleged infraction." (Doc. 22 at 13). Russ also points out that she worked for Windsor for over a year and a half without suffering any discipline and

7

won the employee of the month award a month before her termination. (Id.; Doc. 9-1 at 109:11-13). In addition, Russ highlights that her failure to report the restrictions was an "innocent oversight," for "she did not understand that she was under restrictions until faxing or copying the document on Monday, July 23, 2012." (Doc. 22 at 13). Finally, Russ emphasizes that no residents were injured during her shifts as a patient sitter. (Id. at 14).

Notably, Russ cites no case law to support any of these arguments. More importantly, Russ fails to present evidence that Windsor's proffered reason for firing her—the failure to report the restrictions, which physically endangered Russ and the residents, as well as exposed Windsor to liability—is "unworthy of credence." Alvarez, 610 F.3d at 1265-66. The evidence shows that Windsor knew about Russ's doctor's appointments related to her injury and always let her have time off to see her physician. (Doc. 9-1 at 81:3-88:13). It was only when Windsor learned that Russ had worked as a patient sitter while on medical restrictions, without having informed Windsor of those limitations, that Windsor concluded a violation of company policy occurred. (Doc. 9-2 at 20:17-22; 30:3-5). To the extent Russ asserts that no one was actually injured during the shifts she worked while on restrictions, that argument misses the point. Russ testified that a patient sitter is there "to keep the patient safe," and "had to have the ability to lift [and] hold." (Doc. 9-1 at 149:20-150:6). The possibility that someone could have been injured had Russ been called upon to lift a resident while working as a patient sitter constitutes reason enough in Windsor's eyes to immediately suspend and ultimately terminate her under its policies, and it is not

8

this Court's "role to second-guess the wisdom of an employer's business decisions." Alvarez, 610 F.3d at 1266.

To show pretext, the plaintiff must "meet [the proffered] reason head on and rebut it, and . . . cannot succeed by simply quarreling with the wisdom of that reason." Brooks v. Cnty. Comm'n of Jefferson Cnty., Ala., 446 F.3d 1160, 1163 (11th Cir. 2006) (citations omitted). Russ's argument that Windsor's decision to terminate her was "overly harsh" is a quintessential example of a plaintiff quarreling with the wisdom of an employer's reason. Therefore, even if Russ had met her prima facie case, summary judgment would be appropriate in Windsor's favor because Russ failed to demonstrate that Windsor's reason for termination was pretextual.

### B.     Failure to Reasonably Accommodate a Disability

The ADA defines the phrase "discriminate against a qualified individual on the basis of disability" to include the failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an . . . employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A). Thus, to establish a reasonable accommodation claim under the ADA, a plaintiff must show that (1) she had a disability, (2) there was a reasonable accommodation which would have allowed her to perform the essential functions of the job, and (3) the defendant failed to provide her with a reasonable accommodation. See Mazzeo v. Color Resolutions Int'l, LLC, 746 F.3d 1264, 1268 (11th Cir. 2014). If the plaintiff satisfies the requisite elements, the defendant then has an opportunity to show that providing a reasonable

accommodation would impose an "undue hardship on the operation of [its] business."
42 U.S.C. § 12112(b)(5)(A).

Here, Windsor is entitled to judgment as a matter of law because—based on the evidence in the record—Russ cannot establish the third element of her claim: that Windsor failed to provide her with a reasonable accommodation. For employment discrimination claims under the ADA, to establish that an employer failed to provide a reasonable accommodation, a plaintiff must first show that she made a specific demand for an accommodation. See Warren v. Volusia Cnty., Florida, 188 F. App'x 859, 863 (11th Cir. 2006) ("An employee's failure to request a reasonable accommodation is fatal to the prima facie case; the duty to provide a reasonable accommodation is not triggered unless a specific demand for an accommodation has been made.") (internal citations and quotation marks omitted).

In her response, Russ does not even argue that she made a specific request for an accommodation. Instead, she states "upon receipt of Plaintiff's lifting restrictions, Defendant did nothing to engage in the interactive process with her to determine what accommodations would be appropriate." (Doc. 22 at 10). Russ ignores the fact that the initial burden to request an accommodation lies with her, not Windsor, and points to no evidence that she did so. See Quitto v. Bay Colony Golf Club, Inc., No. 206CV-286-FTM-29DNF, 2007 WL 2002537, at *9 (M.D. Fla. July 5, 2007) ("Plaintiff bears the burden of identifying an accommodation and demonstrating that it would enable him to perform the essential functions of his job."); Hickmon v. TECO Energy, No. 8:10-CV-1147-T-30MAP, 2012 WL 39582, at *5 (M.D. Fla. Jan. 9, 2012) (defendant was

entitled to summary judgment on claim that it failed to reasonably accommodate plaintiff's disabilities because plaintiff failed to identify record evidence reflecting that she identified to or requested from defendant a specific accommodation, which was both reasonable and would have allowed plaintiff to perform the essential functions of her job). Indeed, Russ was asked in her deposition whether she ever asked "for any type of accommodations so [she] could perform [her] job other than for the time off for [her] appointments," to which she responded "no." (Doc. 9-1 89:16-25). As such, Russ's failure to accommodate claim fails as a matter of law.[6]

Accordingly, it is hereby

**ORDERED:**

1.    Defendant NF Windsor, LLC's Case-Dispositive Motion for Summary Judgment (Doc. 9) is **GRANTED**.

2.    The Clerk shall enter judgment in favor of Defendant NF Windsor, LLC and against Plaintiff Eulinda Russ, terminate all pending motions and deadlines, and close the file.

**DONE AND ORDERED** in Jacksonville, Florida the 25th day of April, 2017.

TIMOTHY J. CORRIGAN
United States District Judge

sj
Copies:

---

[6] The scenario might have been different if Russ had disclosed her restrictions and then sought accommodations. But she did not.

Counsel of record